UNITED STATED DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION



FILED

FEB 20 2009

CLERK

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

|  |  |
|---|---|
| BROOK HEMMER, | * |
|  | * |
| Plaintiff, | * |
|  | * |
| -vs- | * |
|  | * |
| GAYVILLE-VOLIN SCHOOL | * |
| DISTRICT, a South Dakota political | * |
| subdivision; and JASON SELCHERT, | * |
| individually and in his official capacity | * |

CIV. 07-4079

MEMORANDUM OPINION AND
ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT

<table>
<tr><td></td><td>*</td></tr>
<tr><td>Defendants and Third<br>Party Plaintiffs,</td><td>*</td></tr>
<tr><td></td><td>*</td></tr>
<tr><td>-vs-</td><td>*</td></tr>
<tr><td></td><td>*</td></tr>
<tr><td>BRAD OAKLEY,</td><td>*</td></tr>
<tr><td></td><td>*</td></tr>
<tr><td>Third Party Defendant.</td><td>*</td></tr>
</table>

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

On May 23, 2006, Third Party Defendant, Brad Oakley ("Oakley"), had sexual intercourse with Plaintiff, Brook Hemmer ("Brook"). Oakley was a teacher and golf coach employed by the Gayville-Volin School District ("GVSD") and Plaintiff was a sixteen-year-old student and member of the golf team. Plaintiff filed a lawsuit against Oakley's employer, GVSD and Superintendent Jason Selchert ("Selchert"), for their failure to receive, investigate and act upon complaints of prior misconduct by Oakley and to provide employees with adequate sexual harassment training in violation of 42 U.S.C. § 1983. Plaintiff additionally alleges that GVSD and Selchert are liable under state law for their negligent supervision and retention of Oakley and for breach of fiduciary duty for failing to report Oakley's misconduct in accordance with SDCL 26-8A-7 and for retaliating against Plaintiff for reporting Oakley's misconduct. Defendants have moved for summary judgment on all

of Plaintiff's claims, Doc. 62.

## BACKGROUND AND RELATED FACTS

The facts will be stated in the light most favorable to Plaintiff, the non-moving party in these summary judgment proceedings.

### *Sexual Relations Between Oakley and Plaintiff*

On May 23, 2006, Oakley, a 28-year-old teacher and coach at GVSD had sexual intercourse with Plaintiff, a 16-year old sophomore girl, in a hotel room in Brookings. Oakley was in Brookings to chaperone three boys and one girl participating in the state golf meet. While Plaintiff was a member of the girls' golf team, she failed to qualify for the state tournament. With the permission of Superintendent Selchert, Plaintiff was allowed to accompany her good friend on the trip.

Over the course of the next two weeks, after the school year had ended, Oakley and Plaintiff twice had sexual intercourse at Oakley's home in Gayville while Plaintiff was babysitting Oakley's children.

Although Plaintiff discussed the incidents with two fellow students who were friends of hers, she did not report any of the three incidents of sexual activity with Oakley to authorities or to her parents. One day, while Plaintiff's parents were at work, GVSD employees, Carrie Oakley (Oakley's wife) and Natalie Selchert, and GVSD student, Tara Nuss, confronted Plaintiff with rumors of her relationship with Oakley. Plaintiff admitted that she and Oakley had sexual intercourse on several occasions.

### *Evidence of Past Incidents of Inappropriate Behavior by Oakley*

Evidence developed during discovery disclosed that in October of 2002, a little more than two and one-half years before Oakley had sexual intercourse with Plaintiff, Oakley had allegedly inappropriately touched the buttocks of another teacher, Laura Haase ("Haase"), during a conference at the Cedar Shores Motel in Chamberlain, South Dakota. Superintendent Selchert approached Haase shortly after the incident, asking if she would accept an apology for Oakley's inappropriate

conduct. Haase did not report the incident to GVSD.

Haase also stated that she had observed Oakley being very "touchy-feely" with a lot of the female senior students and received complaints from some of the girls that his conduct made them feel uncomfortable. Haas discussed these comments with a few teachers, but did not report them to anyone in the administration.

Connie Jensen ("Jensen"), another GVSD teacher, stated that she observed what appeared to her to be flirting behavior between Oakley and another female high school student in the high school lunchroom. Additionally, Jensen testified that she overheard a conversation between Brook and Oakley in which Oakley suggested they meet up sometime after school hours. Like Haas, Jensen did not report these incidents to Selchert or to GVSD.

In November of 2003, some parents complained about what they considered to be inappropriate conduct and behavior by Oakley in his third-grade classroom. Incidents parents complained about ranged from making fun of students to holding students over the garbage can headfirst and shooting rubber bands at students. Oakley was instructed to and did contact the majority of parents to discuss their concerns. Additionally, Selchert invited parents to attend a meeting to discuss complaints regarding Oakley's behavior. Jim Petrik ("Petrik"), a GVSD Board member, was also in attendance. During the meeting, there was discussion of whether to transfer Oakley to a different grade and Petrik stated that Oakley should not be given an assignment that would place him around high school girls. Petrik testified in his deposition that one of the reasons for his concern was that in an executive meeting, one of the GVSD Board members had mentioned that Oakley "should distribute his free time more evenly amongst all the students instead of just the pretty ones."

Another former teacher, Laura Kotalik ("Kotalik"), held a secret meeting at her house to discuss, among other things, Oakley's alleged flirting with eighth-grade girls and an incident in which Kotlik allegedly observed Oakley lean into a girls' bathroom doorway and shut off the lights. GVSD Board members Petrik and Jim Bye ("Bye") were in attendance, but did not follow up on these complaints nor document that the meeting had taken place.

*Policies and Training on Sexual Harassment within GVSD*

3

GVSD's policy on sexual harassment is available to anyone who wishes to read it. The Employee Handbook does not contain GVSD's sexual harassment policy. Instead, the Handbook requires that educators shall "commit no act of moral turpitude or gross immorality." The Handbook also requires that educators shall:

(1) Conduct professional business in such a way that they do not expose the students to unnecessary intimidation, embarrassment or disparagement; (2) Maintain professional relationships with students without exploitation of a student for personal gain or advantage; (3) Maintain professional relationships with students in a manner which is free of vindictiveness, recrimination and harassment.

On the last page of the Handbook is a section entitled "Respect," which provides in part "Do not force students into confrontational situations." GVSD did not have any policy regarding overnight trips for sporting events or other extracurricular activities.

Employees were not provided any training on GVSD's sexual harassment policy and there is no evidence in the record of prior incidents of sexual misconduct in GVSD which would necessitate utilizing the sexual harassment policy promulgated by GVSD.

### *Administrative Actions Taken After Relationship Between Oakley and Plaintiff was Discovered*

Once Plaintiff admitted to the intimate relationship between she and Oakley, GVSD guidance counselor, Natalie Selchert, reported the alleged abuse to the Department of Social Services in accordance with South Dakota law. Oakley and his wife were allowed to resign and neither Selchert nor GVSD invoked the district's right to ask for liquidated damages from the Oakleys for their midsummer resignation.

### *Alleged Incidents of Retaliation Against Plaintiff After Oakley's Resignation*

After the sexual relationship between Plaintiff and Oakley was made public and Oakley was forced to resign, Selchert coached Plaintiff in track and field. Selchert ordered t-shirts for the entire team on which Selchert had printed "if it was easy, we would have called it golf." Plaintiff felt that Selchert intentionally sought to allude to the sexual relationship that occurred between she and Oakley by use of the word "easy" in conjunction with the word "golf."

4

Plaintiff also alleges that another teacher inappropriately slapped her on her rear end during gym glass and that this made her feel uncomfortable.

### Legal History

On May 30, 2007, Plaintiff filed a Complaint against GVSD and Superintendent Selchert, individually and in his official capacity, with the United States District Court for the District of South Dakota Southern Division. Defendants have impleaded Oakley as a Third Party Defendant, however, Plaintiff has not pleaded over.

The First Cause of Action in Plaintiff's Complaint alleges that Oakley acted with deliberate indifference to Plaintiff's constitutional and legal rights to bodily integrity and to be free from sexual abuse in violation of 42 U.S.C. § 1983. Count 1 of the Second Cause of Action alleges that GVSD acted with deliberate indifference to a known risk of constitutional deprivation to Plaintiff in violation of § 1983 because it had a custom or policy of ignoring signs and reports of misconduct by Oakley. Count 2 of the Second Cause of Action alleges that Plaintiff's injuries resulted from GVSD's custom or practice of failing to: train its employees on appropriate conduct between coaches and students; implement policies for out-of-town travel involving teachers, coaches and students; and train its employees to be observant of and act upon signs of an inappropriate relationship between GVSD employees and students. In the Third Cause of Action, Plaintiff charges GVSD with negligent supervision and retention of Oakley under state law. There is no stated Fourth Cause of Action. The Fifth Cause of Action alleges that Selchert and GVSD breached a fiduciary duty to Plaintiff by failing to report Oakley's misconduct in accordance with South Dakota statute and by failing to protect Plaintiff from retaliation and breach of confidentiality in the school year following the revelation of incidents that occurred between Plaintiff and Oakley.

During the motions and pre-trial hearing before the Court on October 20, 2008, Plaintiff indicated that she no longer wished to pursue her breach of fiduciary duty claim premised on GVSD's alleged failure to report Oakley's misconduct in accordance with SDCL § 26-8A-7,[1] as

---

[1]SDCL § 26-8A-7 provides in pertinent part: "Any person who has contact with a child through the performance of services in any public or private school . . . shall notify the school principal or school superintendent or designee of suspected abuse or neglect. The school

alleged in her Fifth Cause of Action, since the facts revealed during discovery indicated that GVSD immediately made a report to the South Dakota Department of Social Services after discovering the relationship between Oakley and Plaintiff.

Defendants move for summary judgment on all of Plaintiff's claims.

## LEGAL STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall be entered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In ruling on a motion for summary judgment, the Court is required to view the facts in the light most favorable to the non-moving party and must give that party the benefit of all reasonable inferences to be drawn from the underlying facts. *AgriStor Leasing v. Farrow*, 826 F.2d 732, 734 (8th Cir. 1987). The moving party bears the burden of showing both the absence of a genuine issue of material fact and its entitlement to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). Once the moving party has met its burden, the non-moving party may not rest on the allegations of its pleadings but must set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 257; *City of Mt. Pleasant v. Associated Elec. Coop., Inc.*, 838 F.2d 268, 273-74 (8th Cir. 1988).

## DISCUSSION

Plaintiff's First and Second Causes of Action allege violations of 42 U.S.C. § 1983. Plaintiff's Third and Fifth Causes of Action allege violations of state law. Plaintiff has not plead

---

principal or superintendent shall [report orally and immediately by telephone or otherwise to the state's attorney of the county in which the child resides or is present, to the Department of Social Services or to law enforcement officers.]"

a Fourth Cause of Action. Defendants have moved for summary judgment on all of Plaintiff's claims. The Court will address each cause of action in turn.

## I.    FEDERAL LAW CLAIMS

### A.    First Cause of Action - Section 1983 Claim Against Oakley

Plaintiff's First Cause of Action alleges that Oakley violated § 1983 when, under color of state law, he acted with deliberate indifference to Plaintiff's constitutional right to bodily integrity and to be free from sexual abuse. GVSD contends, and the Court agrees, that the Court should grant summary judgment against Plaintiff on this claim because Plaintiff has not named Oakley as a defendant in this matter. While Defendants GVSD and Selchert have impleaded Oakley as a Third Party Defendant, Plaintiff has not pleaded over..

### B.    Count 1 of Second Cause of Action - Section 1983 Claim Against GVSD and Selchert for Failure to Receive, Investigate and Act Upon Complaints of Prior Misconduct by Oakley

In order to establish the existence of a governmental custom of failing to receive, investigate and act upon complaints of violations of constitutional rights, a plaintiff must prove:

> (1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees; (2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and (3) That plaintiff was injured by acts pursuant to the governmental entity's custom, i.e., that the custom was a moving force behind the constitutional violation. *Larson v. Miller*, 76 F.3d 1446, 1453 (8th Cir. 1996) (en banc) (citing *Jane Doe A v. Special Sch. Dist.*, 901 F.2d 642, 646 (8th Cir. 1990)).

Plaintiff alleges that Superintendent Selchert and GVSD had a custom of failing to receive, investigate, and act upon complaints relating to past instances of sexual misconduct by Oakley towards other individuals, and that this custom provided Oakley with the opportunity to engage in an inappropriate, sexual relationship with Plaintiff, thus violating her substantive due process right

7

to bodily integrity under the Fourteenth Amendment.

Plaintiff notes several complaints regarding misconduct by Oakley that were relayed to Selchert and/or at least one or more GVSD Board members. For example, Haase stated in her deposition that shortly after Oakley began his employment at GVSD, he grabbed her butt in the bar area of a motel in Chamberlain, South Dakota, when they were there for a two-day conference. Haase stated that later that evening, Selchert approached her to ask if she would accept an apology by Oakley for his inappropriate conduct. Plaintiff also points to a meeting that was attended by a GVSD Board member, Petrik, Selchert, and parents of third-graders in Oakley's class in which they discussed complaints relating to inappropriate conduct by Oakley in the classroom that was of a non-sexual nature. During the meeting, there was a discussion of whether to transfer Oakley to a different grade and Petrik stated that Oakley should not be given an assignment that would place him around high school girls. Petrik testified in his deposition that one of the reasons for his concern was that in an executive meeting, one of the GVSD Board members mentioned that Oakley "should distribute his free time more evenly amongst all the students instead of just the pretty ones." Plaintiff also notes a time in which Kotlik, a GVSD teacher who has since resigned, convened a secret meeting at her house to discuss, among other things, Oakley's alleged flirting[2] with eighth-grade girls and an incident in which Kotlik allegedly witnessed Oakley peek his head into the girls restroom and shut off the lights. GVSD Board members Petrik and Bye were in attendance, but did not follow up on such complaints nor document that the meeting had taken place.[3]

---

[2]In her deposition Kotalik described flirting behavior as "body language and the way you look at someone," "a vibe," and "a personal space issue."

[3]Plaintiff also notes two other incidents of alleged misconduct by Oakley toward female students. Haase stated in her deposition that she had received comments from female students that Oakley was "very touchy-feely" with them and that it made them feel uncomfortable. Jensen, another GVSD teacher, stated in her deposition that she witnessed Oakley flirting with female high school students on several occasions. Jensen also allegedly overheard a conversation between Oakley and Plaintiff in which Oakley asked Plaintiff about her weekend plans and suggested that the two of them get together. It is undisputed that neither Selchert nor any GVSD Board member had notice of these particular incidents since these teachers did not report the alleged misconduct.

Plaintiff argues that Defendants should be estopped from arguing lack of notice of these incidents since Selchert allegedly created an environment of intimidation and favoritism which

The Eighth Circuit has declined to impose § 1983 liability upon a government employer for failure to receive, investigate, or act on complaints regarding employee misconduct significantly more egregious than that alleged here. In *Jane Doe A v. Special Sch. Dist.,* 901 F.2d 642 (8th Cir. 1990), parents of handicapped students who were sexually abused by a school bus driver employed by the school district brought a § 1983 action against the district alleging that it had a custom of failing to adequately receive, investigate and act upon prior complaints of child abuse by the driver. The court in *Jane Doe A* affirmed the district court's decision granting summary judgment in favor of the school district. *Id.* at 646. The district court stated that knowledge of the bus driver's acts of allegedly using profanity toward children riding the bus, kissing a boy and giving him a "snuggle," pushing a child down the steps and pulling his hair, as well as kicking a child, were insufficient to expose the school district to liability under § 1983 because these incidents did not rise to the level of constitutional violations and at worst, constituted common law torts. *Id.* at 644. The district court further stated that the two complaints received regarding constitutional violations by the bus driver just prior to his arrest were insufficient to establish a pattern of such conduct necessary to support a finding of liability under § 1983. *Id.*

Taking the facts in the light most favorable to Plaintiff, the non-moving party in this case, the Court finds that even if Oakley did in fact grab Haase's rear end at the conference, the Eighth Circuit has plainly held that such conduct towards a colleague is insufficient to place a district on notice that the teacher is likely to engage in such behavior towards students. *See Jane Doe A,* 901 F.2d at 646 n.4.

Examining the remaining complaints of alleged misconduct of which Selchert and members

discouraged employees from reporting such behavior out of fear that they may lose their jobs. Although the Eighth Circuit in *Thelma D. v. Bd. of Educ.,* 934 F.2d 929, 936 (8th Cir. 1991) applied a requirement of actual knowledge on the part of school district officials in that case, it suggested in future cases that evidence of a practice of avoiding such knowledge would be sufficient to impose liability. Specifically, the court in *Thelma D.* stated that it "will closely scrutinize bureaucratic hierarchies which, in their operation, tend to insulate its policymaking officials from knowledge of events which may subject them to § 1983 liability." *Id.*

The Court need not consider this claim at the present time since the Court finds that these incidents, like those discussed above, do not rise to the level of constitutional violations sufficient to expose GVSD to liability under § 1983.

9

of the GVSD Board were allegedly aware, the Court finds that these incidents are insufficient to show a "continuing, widespread, persistent pattern of *unconstitutional* misconduct." *Jane Doe A*, 901 F.2d at 646 (emphasis added). Complaints of the type of flirting behavior that Oakley allegedly exhibited toward female high school students, no matter how numerous, as well as the immature act of turning off the lights in the girls restroom simply do not constitute unconstitutional misconduct which would expose GVSD or Selchert to liability under § 1983 for Plaintiff's injuries.

C.      **Count 2 of Second Cause of Action - Section 1983 Claim Against GVSD and Selchert for Failure to Train Employees on Appropriate Conduct Between Teachers, Coaches and Students**

To establish a failure to train claim under § 1983, a plaintiff must show that the policy maker's "failure to train its employee in a relevant respect evidences a 'deliberate indifference'" to the rights of the students. *Thelma D. v. Bd. of Educ.*, 934 F.2d 929, 934 (8th Cir. 1991) (quoting *City of Canton v. Harris*, 489 U.S. 378, 389, 109 S.Ct. 1197, 1205, 103 L.Ed.2d 412 (1989)). In order to establish the element of deliberate indifference, plaintiffs must prove that the policy-making authority had notice that its procedures were inadequate and likely to result in a violation of constitutional rights. *Id.* (citing *Harris*, 489 U.S. at 396, 109 S.Ct. at 1208 (O'Connor, J., concurring)).

Notice of inadequate procedures may be proved in one of two ways. *Thelma D.*, 934 F.2d at 934. First, notice may be implied where failure to train officers or employees is so likely to result in a violation of constitutional rights that the need for training is patently obvious. *Id.* (citing *Harris*, 498 U.S. at 390 n.10, 109 S.Ct. at 1205 n.10). For example, in *City of Canton v. Harris*, 489 U.S. at 390 n.10, 109 S.Ct. at 1205 n.10, the United States Supreme Court stated that because police officers are certain to be required on occasion to use force in apprehending felons, "the need to train officers in the constitutional limitations on the use of deadly force can be said to be 'so obvious,' that failure to do so could properly be characterized as 'deliberate indifference' to constitutional rights." Even if the need for additional training is not obvious from the outset, proof of a pattern of constitutional violations may be enough to put the Board on notice that its employees' responses to

a regularly recurring situation are insufficient to protect the constitutional rights of the students. *Thelma D.*, 934 F.2d at 935 (citing *Harris*, 498 U.S. at 397, 109 S.Ct. at 1209 (O'Connor, J., concurring)).

Since the Court has already held that Plaintiff has failed to prove that Oakley engaged in a pattern of unconstitutional conduct prior to engaging in a sexual relationship with Plaintiff, the Court will focus its analysis on whether the need to provide sexual harassment training is patently obvious so as to guard against a likely violation of a student's constitutional right to bodily integrity.

Plaintiff cites *Lebeau v. Timber Lake Sch. Dist.*, No. 99 Civ.3024 (D.S.D. Mar. 22, 2002), for the proposition that there is a patently obvious need to provide adequate sexual harassment training in schools in order to guard against constitutional violations of the sort alleged in this case. In *Lebeau*, the court did not, as Plaintiff suggests, state that failure to provide adequate sexual harassment training to teachers is actionable under § 1983 in all instances, but rather that it was actionable in that particular case, in part, because the administration was aware the coach was meeting behind closed doors with female students contrary to the athletic director's directive that he was no longer to meet with his players in such a manner. *Id.*, slip op. at 8.

Even assuming, for the sake of argument, that the need to train teachers as to appropriate boundaries with students is patently obvious in order to guard against the sexual harassment of students and that GVSD's training in this regard was inadequate, Plaintiff still must prove the inadequate training was the "moving force" behind Plaintiff's injuries. *Jane Doe A v. Special Sch. Dist.*, 901 F.2d 642, 646 (8th Cir. 1990). Courts have generally held that inadequate training is not the cause of a constitutional violation if the violation is clearly wrong and grossly immoral. *See, e.g.*, S.J. v. Kansas City Missouri Pub. Sch. Dist., 294 F.3d 1025, 1029 (8th Cir. 2002) (stating that school volunteer's decision to commit a felony cannot in any way be attributed to lack of proper training); *Smith v. Metropolitan Sch. Dist. Perry Tp.*, 128 F.3d 1014, 1029 n.16 (7th Cir. 1997) ("[A]bsence of formal procedures and policies against sexual harassment (i.e., failing to state the obvious) cannot constitute negligence."); *Barney v. Pulsipher*, 143 F.3d 1299, 1308 (10th Cir. 1998) ("Specific or extensive training hardly seems necessary for a jailer to know that sexually assaulting inmates is inappropriate behavior."). For example, in *Andrews v. Fowler*, 98 F.3d 1069, 1077 (8th Cir. 1996), the court found that the city's failure to train its police officers not to rape young women

was not constitutionally deficient since rape is clearly contrary to the duties of law enforcement.

The Court concludes that Oakley was clearly abusing his position of authority and trust as a teacher by engaging in a sexual relationship with a sixteen-year-old high school student whom he was coaching and any alleged deficiency in GVSD's sexual harassment training cannot be considered to be the moving force behind Plaintiff's injuries. Oakley's conduct in this case was clearly wrong and grossly immoral. The Court therefore grants Defendants' motion for Summary Judgment as it pertains to Plaintiff's failure to train claim.

## II.   STATE LAW CLAIMS

### A.   Third Cause of Action - Negligent Supervision and Retention

In their initial brief, Defendants raised, albeit briefly, the defense of sovereign immunity to Plaintiff's state law negligence claims and discussed the immunity defense further in a late supplemental brief filed with the permission of the Court. "'[T]he Eleventh Amendment defense sufficiently partakes in the nature of a jurisdictional bar that it may be raised at any point of the proceedings," and as a result, the Court permitted Defendants to raise the immunity issue at such a late juncture in the proceedings over Plaintiff's objection. *Fla. Dept. of State v. Treasure Salvors, Inc.,* 458 U.S. 670, 683 n.18, 102 S.Ct. 3304, 3314, 73 L.Ed.2d 1057 (1982) (quoting *Edelman v. Jordan,* 415 U.S. 651, 678, 94 S.Ct. 1347, 1363, 39 L.Ed.2d 662 (1974)). While the Eleventh Amendment may also serve to bar Plaintiff's federal § 1983 claim, Defendants have not asserted this defense to the § 1983 claim and the Court is not bound to raise it on its own motion. *Patsy v. Bd. of Regents,* 457 U.S. 496, 515, 102 S.Ct. 2557, 2567, 102 S.Ct. 2557 ("[W]e have never held that [Eleventh Amendment immunity] is jurisdictional in the sense that it must be raised and decided by this Court on its own motion.").

#### i.   GVSD's Liability

The Eleventh Amendment mandates that an unconsenting state is immune from suits brought

in federal court by her own citizens as well as by citizens of another state. *Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974); *Great N. Life Ins. Co. v. Read,* 322 U.S. 47, 64 S.Ct. 873, 88 L.Ed. 1121 (1944). Eleventh Amendment immunity also extends to entities and their employees that bear such a close relationship to the state that a suit against the entity is in reality a suit against the state. *Greenwood v. Ross,* 778 F.2d 448, 453 (8th Cir. 1985). Such entities are typically referred to as "arms of the state." *Id.*

Whether or not Defendants are entitled to immunity from these state law claims, therefore, depends on whether GVSD is to be treated as an "arm of the State" partaking of the States' Eleventh Amendment immunity, or is instead to be treated as a municipal corporation or other lesser governmental unit to which the Eleventh Amendment does not extend. *Mt Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 280, 97 S.Ct. 568, 573, 50 L.Ed.2d 471 (1977). The United States Supreme Court has stated that "the question whether a particular state agency has the same kind of independent status as a county or is instead an arm of the State, and therefore 'one of the United States' within the meaning of the Eleventh Amendment, is a question of federal law. But that federal question can be answered only after considering the provisions of state law that define the agency's character." *Regents of the Univ. of Cal. v. Doe,* 519 U.S. 425, 430 n.5, 117 S.Ct. 900, 137 L.Ed.2d 55 (1997).

In *Mt. Healthy,* 429 U.S. at 280-81, the Supreme Court found that an Ohio school board was not entitled to Eleventh Amendment immunity. In doing so, the Court observed that Ohio law defined "State" as not inclusive of "political subdivisions" while at the same time defining "political subdivisions" to include local school districts. *Id.* at 280 (citing Ohio Rev. Code Ann. § 2743.01). In support of its position, the court in *Mt. Healthy* further noted that while the school board receives some guidance from the State Board of Education and a significant amount of money from the State, local school boards also have extensive powers to issue bonds and to levy taxes. *Id.* (citations omitted). The Court concluded that taking into consideration all of these factors, school boards in Ohio resembled a county or city more than an "arm of the State." *Id.* at 280-81.

Similar to the analysis conducted by the Court in *Mt. Healthy,* the Eighth Circuit has stated that in determining whether an entity is an "arm of the state" for purposes of Eleventh Amendment immunity, courts must look at the following three factors: "(1) an agency's powers and

13

characteristics under state law; (2) an agency's relationship to the state-its autonomy from the state and degree of control over its own affairs, and (3) whether any award would flow from the state treasury." *Gorman v. Easley*, 257 F.3d 738, 743 (8th Cir. 2001), *rev'd on other grounds, Barnes v. Gorman*, 534 U.S. 181, 122 S.Ct. 2097, 153 L.Ed.2d 230 (2002).

In considering these factors, this Court concluded in *Wigg v. Sioux Falls Sch. Dist.*, 274 F.Supp.2d 1084, 1096 (D.S.D. 2003), *rev'd in part on other grounds, Wigg v. Sioux Falls Sch. Dist.*, 382 F.3d 807 (8th Cir. 2004) (quoting *Mt. Healthy*, 429 U.S. at 280), that school districts in the state of South Dakota more closely resemble "a municipal corporation or other political subdivision to which the Eleventh Amendment does not extend." In support of its conclusion, the Court in *Wigg* noted that as in *Mt. Healthy*, state law explicitly excludes school districts from the definition of a "state agency." *Id.* (citing SDCL 1-24-1(3)). The Court also pointed to the fact that while the secretary of the Department of Education and Cultural Affairs has general supervisory power over South Dakota's schools, school districts have a large degree of control over their own affairs in that they can "sue and be sued, contract and be contracted with, purchase, hold and use personal and real property for school purposes, and sell and dispose of the same." *Id.* (citing SDCL 13-5-1). Additionally, the Court noted that under the South Dakota Constitution, the legislature is empowered to authorize school districts to levy taxes. *Id.* (citing SD. Const. Art. 8, § 15). Taking account the balance of these factors as a whole, along with the fact that a damages award would be paid by the school district and not the state, the Court in *Wigg* concluded that school districts within the state of South Dakota are akin to municipalities and accordingly, are not entitled to Eleventh Amendment immunity. *Id.*

Upon review of the relevant state statutes, the Court finds that its analysis in *Wigg* of the characteristics of South Dakota school districts and their relationship to the State was sound and affirms its previous holding that school districts in the state of South Dakota, like GVSD, are akin to municipalities and are not "arms of the state" for Eleventh Amendment immunity purposes.[4]

---

[4]The Court concludes after further review that the fact that a damage award may be met through insurance proceeds does not alter the analysis of an entity's immunity under the Eleventh Amendment. *Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 428, 117 S.Ct. 900, 137 L.Ed.2d 55 (1997) ("The question is not who pays in the end; it is who is legally obligated to pay the judgment that is being sought.") (citation omitted).

Accordingly, the Court will evaluate merits of Plaintiff's state law claims against GVSD.

In order to support a claim for negligent retention or negligent supervision, Plaintiff must prove that it was reasonably foreseeable to GVSD that Oakley would engage in an inappropriate sexual relationship with a student. *Brown v. Youth Servs. Int'l*, 89 F.Supp.2d 1095, 1103-04 (D.S.D. 2000) (citing *Benson v. Nw. Airlines, Inc.*, 561 N.W.2d 530, 540 (Minn. App. 1997) (dismissing negligent retention claim because plaintiff failed to present any evidence that employee had any known propensities that it should have been foreseeable that she posed at threat of injury to others); *P.L. v. Aubert*, 527 N.W.2d 142, 149 (Minn. App. 1995), *rev'd on other grounds*, 545 N.W.2d 666 (Minn. 1996) (negligent supervision)).

There is no evidence to suggest that it was reasonably foreseeable to GVSD that Oakley would engage in a sexual relationship with either Plaintiff or any other student. Plaintiff does not allege that Oakley inappropriately touched, attempted to touch, or had even expressed a desire to touch a student in a manner so as to violate his or her constitutional right to bodily integrity. Flirting behavior of the type alleged here is simply insufficient to place GVSD on notice that Oakley was likely to engage in the type of unconstitutional misconduct that is alleged in this case.

### ii.    *Selchert's Liability*

Plaintiff has sued Defendant, Jason Selchert, in both his official and individual capacities.

#### Official Capacity Claims

The Court must apply state immunity law in determining the scope of immunity accorded Selchert in his official capacity for claims arising under state tort law. *See Kuha v. City of Minnetonka*, 365 F.3d 590, 607 (8th Cir. 2003) (citing *Elwood v. Rice County*, 423 N.W.2d 671, 677 (Minn. 1988) ("The common law of official immunity retains an independent vitality in state tort actions.")); *see also Fegens v. Norris*, 537 F.3d 897, 908 (8th Cir. 2008) (applying state law to official capacity claims arising under state law); *Drake v. Koss*, 445 F.3d 1038, 1043 (8th Cir. 2006) (applying state law to official capacity claims arising under state law).

Article III, section 27 of the South Dakota Constitution recognizes the State's sovereign right not to be hailed into court without its consent. This right derives from English common law and the notion that "the king himself could not be charged with wrongdoing . . . ." *Kyllo v. Panzer,* 535 N.W.2d 896, 900 (S.D. 1995) (quoting Stuart M. Speiser, Charles F. Frause, & Alfred W. Gans, *The American Law of Torts* § 6.31 (1985)).

In 1986, the South Dakota State Legislature extended sovereign immunity to all public entities, including school districts,[5] as well as to employees, officers, or agents of public entities with the enactment of SDCL chapter 21-32A. *Unruh v. Davison County,* 744 N.W.2d 839, 843 (S.D. 2008). The scope of immunity afforded Selchert, an employee of a public entity, is covered under SDCL 21-32A-2 which provides:

> Except insofar as a public entity, including the state, participates in a risk sharing pool or insurance is purchased pursuant to 21-32A-1, any employee, officer, or agent of the public entity, including the state, while acting within the scope of his employment or agency, whether such acts are ministerial[6] or discretionary, is immune from suit or liability for damages brought against him in either his individual or official capacity. The immunity recognized herein may be raised by way of an *affirmative defense.*

---

[5]SDCL 3-21-1(2) defines "public entities" as the State of South Dakota, all of its branches and agencies, boards and commissions. The term also includes all public entities established by law exercising any part of the sovereign power of the state, including, but not limited to municipalities, counties, school districts, townships, sewer and irrigation districts, and all other legal entities that public entities are authorized by law to establish.

[6]While SDCL 21-32A-2 on its face, extends immunity to ministerial and discretionary acts by public employees, the South Dakota Supreme Court in *Kyllo v. Panzer,* 535 N.W.2d 896, 903 (S.D. 1995), has stated that SDCL 21-32A-2 is unconstitutional so far as it extends sovereign immunity to state employees performing ministerial functions. In so holding, the Court stated that the common law of negligence and employees' personal liability for their wrongful conduct existed well before the South Dakota Constitution and the legislature does not have the authority to wholly abrogate such common-law actions guaranteed by the constitution. *Id.* (citation omitted). Although PEPL coverage was amended to comport with *Kyllo,* the Legislature has not yet amended these statutes. *Hansen v. S.D. DOT,* 584 N.W.2d 881, 885 n.3 (S.D. 1998). That being said, the Court's holding in *Kyllo* does not affect its analysis in this case since Selchert failed to raise the sovereign immunity defense in his Answer.

21-32A-2 (emphasis added). Because Selchert failed to raise this defense in his Answer, it is deemed waived. *Jurgensen v. Smith,* 611 N.W.2d 439, 442 (citing SDCL 15-6-8(c)) ("[A] defendant is required to plead any and all affirmative defenses in the answer to the plaintiff's complaint."). Accordingly, the Court will proceed to analyze the merits of the claims against Selchert in his official capacity.

As stated above by the Court when analyzing GVSD's liability for these claims, the Court finds that there is insufficient evidence, based on prior conduct by Oakley, that he was likely to engage in a sexual relationship with a student. Although Plaintiff alleges that Selchert should have been aware of his propensity to engage in a sexual act with a student based upon the incident in which Oakley grabbed the rear end of a fellow teacher, Laura Haase, the Eighth Circuit has plainly held that such conduct towards a colleague is insufficient to place a school district on notice that the teacher is likely to engage in such behavior towards students. *See Jane Doe A v. Special Sch. Dist.,* 901 F.2d 642, 646 n.4 (8th Cir. 1990). Flirting behavior of the type alleged here between Oakley and other female students is insufficient to place Selchert on notice that Oakley was likely to engage in the type of unconstitutional misconduct that is alleged in this case.

### Individual Capacity Claims

Whether or not Selchert is immune from liability for state law claims brought against him in his individual capacity is a question of state law. *See Kuha v. City of Minnetonka,* 365 F.3d 590 (8th Cir. 2003) (applying state immunity law to individual capacity claims arising under state law). In South Dakota, state and municipal employees who are sued in an individual capacity are entitled to immunity when they perform discretionary functions, but not when they perform ministerial functions. *Cassazza v. South Dakota,* 616 N.W.2d 872, 875 (S.D. 2000); *Kruger v. Wilson,* 325 N.W.2d 851, 853 n.3 (S.D. 1982) ("Although the rule of immunity differs between state and municipal entities, the same factors, to-wit, whether the acts are discretionary or ministerial, are considered to determine whether such immunity extends to their respective employees.").

The South Dakota Supreme Court has recognized the "difficulties inherent" in analyzing the "ministerial/discretionary dichotomy." *Hansen v. S.D. DOT,* 584 N.W.2d 881, 886 (S.D. 1998). "[T]he determination as to whether an official has acted in his or her discretionary capacity, and

17

therefore is entitled to immunity, is not subject to a fixed, invariable rule, but instead requires a discerning inquiry into whether the contributions of immunity to effective government in the particular context outweigh the perhaps recurring harm to the individual citizens...." *Id.* (citing 63C Am. Jur. 2d *Public Officers and Employees* § 327, at 775-76 (1997)).

While a court must certainly consider matters of public policy when analyzing whether an act is ministerial or discretionary in nature, the Supreme Court of South Dakota has defined "ministerial act" more narrowly than some of the other federal and state court opinions cited to by Plaintiff.

In *Hansen*, 584 N.W.2d 881 (S.D. 1998), the South Dakota Supreme Court evaluated whether the defendant had a ministerial duty under SDCL 31-32-10 to protect motorists by erecting a guard over part of a bridge that was being repaired. SDCL 31-32-10 provides in pertinent part:

> If any highway, culvert, or bridge is damaged by flood, fire or other cause, to the
> extent that it endangers the safety of public travel, the governing body responsible for
> the maintenance of such highway, culvert, or bridge, shall within forty-eight hours
> of receiving notice of such danger, erect guards over such defect or across such
> highway of sufficient height, width, and strength to guard the public from accident
> or injury and shall repair the damage or provide an alternative means of crossing
> within a reasonable time after receiving notice of the danger.

The plaintiff in *Hansen* argued that because the bridge was being repaired, it was essentially "damaged by other cause," thus imposing upon the defendant the ministerial duty to erect a barrier as prescribed in SDCL 31-32-10.

The court in *Hansen* concluded that SDCL 31-32-10 did not impose a ministerial duty upon the defendant to erect a barrier and thus held that the defendant was protected from liability as to these claims under the doctrine of sovereign immunity. *Id.* at 887-88 (citing 57 Am.Jur.2d *Municipal, County, School & State Tort Liability* § 120, at 132-33 (1988)), the court in *Hansen* defined a ministerial act as:

> [A]bsolute, certain, and imperative, involving merely the execution of a specific duty
> arising from fixed designated facts or the execution of a set task imposed by a law
> prescribing and defining the time, mode, and occasion of its performance with such

18

certainty that nothing remains for judgment or discretion, being a simple, definite duty arising under and because of stated conditions and imposed by law. A ministerial act envisions direct adherence to a governing rule or standard with a compulsory result. It is performed in a prescribed manner without the exercise of judgment or discretion as to the propriety of the action. In short, once it is determined that the act should be performed, subsequent duties may be considered ministerial. If there is a *readily ascertainable standard* by which the action of the government servant may be measured, whether that standard is written or the product of experience, it is not within the discretionary function exception.

*Id.* at 886. Applying this definition to the facts of the case, the court in *Hansen* rejected the plaintiff's argument, stating that "'other cause' hardly defines a 'set task imposed by a law prescribing and defining the time, mode, and occasion of its performance with such certainty that nothing remains for judgment or discretion.'" *Id.* at 887. Additionally, the court in *Hansen* noted that abrogating immunity would seriously compromise effective government because such a broad reading of the statute would render the defendant liable for every defect arising on the state highway no matter what the degree and what the cause. *Id.* at 888.

Another case that analyzed the "ministerial/discretionary dichotomy" was *Casazza v. State*, 616 N.W.2d 872 (S.D. 2000), in which an inmate in a women's penitentiary sued the Secretary of the Department of Corrections ("DOC") and the Warden for negligent supervision, negligent training, and negligent hiring because she had been raped by a prison guard. The court in *Casazza* rejected a plaintiff's argument that the supervisory or negligent training or hiring duties of the Secretary of the Department of Corrections and the Warden were ministerial on the basis that the plaintiff failed to provide any decisional authority as to what, if any, supervisory standards applied to the individual defendants in employment or supervision of other prison guards. *Id.* at 876.

In this case, Plaintiff cites the following policies for the proposition that Selchert's supervisory actions are ministerial, rather than discretionary in nature:

1.      GVSD policy, which Selchert is charged with enforcing, requires that all probationary teachers must receive formal evaluations every semester.

2.      The GVSD staff handbook, which Selchert is allegedly charged with enforcing, requires that

educators shall:

- Commit no act or moral turpitude or gross immorality;
- Conduct professional business in such a way that they do not expose the students to unnecessary intimidation, embarrassment or disparagement;
- Maintain professional relationships with students without exploitation of a student for personal gain or advantage;
- Maintain professional relationships with students in a manner which is free of vindictiveness, recrimination and harassment.
- Do not force students into confrontational situations.

3.  GVSD's policy on sexual harassment.

4.  GVSD's policy for hiring for the position of Superintendent which requires that the superintendent must have five year's experience and a graduate degree.

The Court concludes that under *Hansen*, the policies cited by Plaintiff in GVSD's staff handbook which require, for example, that educators shall "maintain professional relationships with students in a manner which is free of vindictiveness, recrimination and harassment," are not proof that Selchert's supervisory or hiring responsibilities are ministerial in nature because they in no way "involve[ ] merely the execution of a specific duty arising from fixed designated facts or the execution of a set task imposed by a law prescribing and defining the time, mode, and occasion of its performance with such certainty that nothing remains for judgment or discretion, being a simple, definite duty arising under and because of stated conditions and imposed by law." Accordingly, the duties that were pointed out that Selchert had were not ministerial in nature. Moreover, as in *Hansen*, such a broad reading of these policies would even without more, essentially render a superintendent liable for every unprofessional act committed by a teacher towards his or her students.

With regard to GVSD's policy on sexual harassment, Plaintiff fails to point to any definite duty therein that Selchert has allegedly violated. Even if Plaintiff was able cite such a duty, Plaintiff must prove that Selchert's breach of the duty in this negligence action was the cause of Plaintiff's injuries. *See Casazza v. South Dakota*, 616 N.W.2d 872, 875 (S.D. 2000) ("[A] state employee who fails to perform a merely ministerial duty, is liable for the proximate results of his failure to any person to whom he owes performance of such duty.") (internal quotation and citation omitted).

20

Plaintiff cannot meet this burden of proof since the Court has already held that it was not foreseeable that, based on prior instances of misconduct by Oakley, that he was likely to engage in sexual intercourse with a student.

The Court likewise dismisses Plaintiff's negligence claim based on Selchert's alleged breach of GVSD's policy requiring all probationary teachers to receive formal evaluations every semester because Plaintiff cannot under these facts prove that the alleged breach was a proximate cause of Plaintiff's injuries.

Finally, the duty to hire for the position of Superintendent is imposed upon GVSD, not upon the Superintendent, and Selchert may not therefore be held liable for any breach of this duty.

As a result of these findings, the Court grants Defendants' Motion for Summary Judgment as it applies to Plaintiff's negligent hiring and supervision claims asserted against Selchert in his individual capacity.

## B.     Fifth Cause of Action - Breach of Fiduciary Duty

Plaintiff alleges in its Fifth Cause of Action that Selchert and GVSD breached their fiduciary duty to Plaintiff by: (1) failing to report Oakley's misconduct in accordance with SDCL 26-8A-7, and (2) failing to protect Plaintiff from retaliation and breach of confidentiality in the school year following the revelation of Oakley's misconduct.

In the pre-trial hearing held before the Court, Plaintiff indicated that she was withdrawing the breach of fiduciary duty claim premised on failure to report Oakley's misconduct in accordance with SDCL § 26-8A-7[7] since subsequent discovery revealed that GVSD guidance counselor, Natalie Selchert, immediately made a report to the South Dakota Department of Social Services after the discovering the relationship between Oakley and Plaintiff.

---

[7]SDCL § 26-8A-7 provides in pertinent part: "Any person who has contact with a child through the performance of services in any public or private school . . . shall notify the school principal or school superintendent or designee of suspected abuse or neglect. The school principal or superintendent shall [report orally and immediately by telephone or otherwise to the state's attorney of the county in which the child resides or is present, to the Department of Social Services or to law enforcement officers.]"

Plaintiff also clarified in the pre-trial hearing that her claim alleging breach of fiduciary duty for failing to protect Plaintiff from retaliation and breach of confidentiality in the school year following the revelation of Oakley's misconduct, was primarily based on the following two incidents. First, after the sexual relationship between Plaintiff and Oakley was made public and Oakley was forced to resign, Jason Selchert coached Plaintiff in track and field. Selchert ordered t-shirts for the entire team on which Selchert had printed "if it was easy, we would have called it golf." Plaintiff felt that Selchert intentionally sought to allude to the sexual relationship that occurred between she and Oakley by use of the word "easy" in conjunction with the word "golf." Second, Plaintiff alleges that another teacher inappropriately slapped her on her rear end during gym glass and that this made her feel uncomfortable.

The Court finds that these incidents, even after resolving every reasonable inference in Plaintiff's favor, are insufficient to support a retaliation claim. As a result, the retaliation claim is dismissed.

For the foregoing reasons, it is hereby ORDERED that:

(1)     Defendants' Motion for Summary Judgment, Doc. 62, is GRANTED with prejudice.

(2)     Plaintiff's Motion in Limine, Doc. 115, and Motion to Strike Witnesses, Doc. 121, are DENIED as moot.

Dated this 20th day of February, 2009.

BY THE COURT:

Lawrence L. Piersol
United States District Judge

ATTEST:
JOSEPH HAAS, CLERK

BY: Shelly Margulies
DEPUTY

22